413 A.2d 418

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Cornell GALLOWAY, Appellee.**

Superior Court of Pennsylvania.

Argued July 16, 1979.

Filed Oct. 26, 1979.

306

Edward F. Browne, Jr., Assistant District Attorney, Lancaster, for Commonwealth, appellant.

Penn B. Glazier, Lancaster, for appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

MONTGOMERY, Judge:

This is an appeal by the Commonwealth from the order of the lower court ruling that appellee-Galloway's wife was not competent to testify against him at a second trial under the Act of May 23, 1887, P.L. 158, § 2(b); as amended April 27, 1909, P.L. 179 § 1; as amended May 11, 1911, P.L. 269, § 1; 19 P.S. § 683.[1] From this order, the Commonwealth filed a Petition for Permission to Appeal, which was granted on June 22, 1978.

Appellee was first tried on March 30, 1972, and found guilty, by a jury, of second degree murder. He was sentenced to a term of ten to twenty years, and following a direct appeal to the Supreme Court, this judgment of sentence was reversed, and a new trial awarded.[2] Appellee's wife had not testified at the first trial.

The testimony heard at the pre-trial conference on May 17, 1978, held pursuant to Pa.R.Crim.P. 311, established that appellee and Deborah Galloway were lawfully married in 1969. After having lived together at several locations in the City of Lancaster, Pennsylvania, appellee and his wife separated around Easter, 1971. Galloway and his wife established separate residences and lived apart. At the hearing in this case, it was established that Mrs. Galloway is still legally married to appellee and has in her custody their two children. Mrs. Galloway testified under a stipulation that her testimony was to be considered solely for the purpose of determining her competency to testify at the trial. She

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania and Judge ROBERT W. HONEYMAN of the Court of Common Pleas, Montgomery County, Pennsylvania, are sitting by designation.

1. This statute was repealed effective June 27, 1978, by the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, No. 53, but was substantially reenacted as part of the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2; 42 Pa.C.S.A. § 5913.

2. *Commonwealth v. Galloway*, 476 Pa. 322, 382 A.2d 1196 (1978).

testified that on the morning of May 30, 1971 appellee telephoned her and told her that he wanted to see the children. In the afternoon when appellee was at her apartment, Mrs. Galloway and appellee had a fight, and she testified that each hit the other several times. She also stated that appellee wanted her to telephone one of the young men who had helped move her belongings into the apartment. After she refused at least one time she did telephone a girl's apartment where she knew Robert Jones could frequently be reached. Jones was one of the young men who had helped Mrs. Galloway move. She spoke to Jones and asked him to come over to her apartment. Her testimony, after refreshing her recollection from the transcript of the preliminary hearing in this case, was that after they had stopped hitting each other, appellee had a gun in his hand which he pointed at her. The gun was in appellee's hand while Mrs. Galloway was on the telephone with Jones. She claimed at this hearing that she would have made the telephone call even if the gun had not been in appellee's hand.

Jones came to the apartment shortly after the telephone conversation. Appellee hit Jones first and then a fight ensued. Also present at this time was George Quinn, who is now deceased. At this point Mrs. Galloway went into the bedroom of the apartment, went out the window and ran to a nearby apartment. She told the occupant to call the police as appellee and Jones were fighting. Then she ran down the steps from this apartment and heard a noise which she stated could have been a gun or a car backfiring. She did not think that she heard this noise more than twice.

The evidence introduced at the hearing disclosed that three charges were brought against appellee relating to offenses occurring on May 30, 1971 at the apartment of Mrs. Galloway *before* Jones arrived. Two of these charges were assault and battery against Mrs. Galloway (No. 1389 of 1971) and pointing a deadly weapon at Mrs. Galloway (No. 1390 of 1971). The criminal complaints were issued by a District

Justice on August 18, 1971. The criminal complaint charging the appellee with the murder of Jones was issued by the District Justice on May 31, 1971.

The testimony of the Deputy Clerk of Court was that the other charges were nolle prossed. A nolle prosequi on Numbers 1389 and 1390 of 1971 was signed by the District Attorney and dated June 17, 1976 which date was after appellee was sentenced on January 5, 1973 for second degree murder arising out of Jones' death and before the Supreme Court remanded the case for a new trial.

At the close of the testimony Mrs. Galloway's attorney stated that she did not want to testify against her husband and wanted to invoke the protection under the 1887 competency statute. At the same time the Commonwealth stated that it could not proceed to a retrial of this murder charge without her testimony. In 1971, Mrs. Galloway filed a complaint in divorce against appellee and this divorce action is still pending.

On appeal, the Commonwealth argues that where the violence which resulted in the death of a third party is part of the res gestae of violence directed against the spouse, the exception contained in 19 P.S. 683[3] making the spouse competent to testify, applies to all charges despite the fact that the assault counts arising from the violence directed against the spouse are not tried with the murder charge.

3. Nor shall husband and wife be competent or permitted to testify against each other, or in support of a criminal charge of adultery alleged to have been committed by or with the other, except that in proceedings for desertion and maintenance, and in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them, each shall be competent witness against the other, and except also that either of them shall be competent merely to prove the fact of marriage, in support of a criminal charge of adultery or bigamy alleged to have been committed by or with the other. 1887, May 23, P.L. 158, § 2(b); 1909, April 27, P.L. 179, § 1; 1911, May 11, P.L. 269, § 1.

Although, at common law, the rationale underlying the incompetency rule was that husband and wife were one person,[4] the more modern approach involves the basic interest of society in the preservation of a marriage. "The prohibition against the giving of testimony by one married party against the other is based upon consideration for preserving domestic peace, harmony and the sanctity of the marriage." *Commonwealth v. Wilkes*, 414 Pa. 246, 251, 199 A.2d 411, 413 (1964), cert. denied, 379 U.S. 939, 85 S.Ct. 344, 13 L.Ed.2d 349 (1964). However, an exception to the general rule of incompetency developed at common law and is codified in Pennsylvania, by 19 P.S. 683.[5] Under this exception, one spouse was rendered competent to testify against the other spouse concerning any act of physical violence committed by the one upon the person of the other. This exception was created partly to protect the injured spouse, but also partly for the sake of public justice in seeing to it that criminal acts do not go unpunished. Clearly, if the wife is deemed competent by this exception, the efficacy of preserving domestic peace and tranquility has already been abrogated by the actions of the accused spouse.

In the latest Pennsylvania case, interpreting 19 P.S. § 683, *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976), the court held that where a husband had shot his wife as well as two other persons, and where he was placed on trial for all three of the shootings, the wife's testimony was admissible against the husband not only with respect to the harm directed against her, but also as to the harm directed against the others. The justification for this holding was that the acts of the husband against both the wife and third persons arose out of the same criminal episode. The court stated:

**4.** L. Coke, *Commentary Upon Littleton*, 6b (1628): ". . . A wife cannot be produced either for or against her husband 'quia sunt duae animae in carne une' (For they are two souls in one flesh.)"

**5.** 19 P.S. § 683 has been interpreted as intending to make competency the rule and incompetency the exception. See *Commonwealth v. Clanton*, 395 Pa. 521, 151 A.2d 88 (1959).

The language of the statute clearly makes a wife competent to testify against her husband 'in any criminal proceeding' against him for bodily harm or violence directed against her; it does not restrict that competency to testimony relevant to his alleged criminal conduct toward her and thereby make testimony otherwise relevant to the proceeding incompetent.

Moreover, there can be no question that all the testimony objected to instantly was indeed relevant to the alleged violence directed against the wife; a *fortiori* it was competent in a trial in which appellant was tried for his conduct.

Based on the facts surrounding the homicide in the instant case, we find little doubt that the assault on appellee's wife and the killing of Jones were, as in *Robinson*, inextricably a part of the same criminal episode. However, the distinction between the two cases, on which appellee relies, is that instantly, the assault charges involving Mrs. Galloway and the Jones' murder charge were not tried together in the same criminal proceeding, and therefore the rationale of *Robinson* is not applicable. We find this to be a distinction without a difference.

In point of fact this issue is discussed, though left undecided, in *Robinson* in footnote 5, to the opinion:

. . . We, therefore, need not determine . . . whether Mrs. Robinson would have been competent to testify against her husband in a separate trial of the other charges against him arising out of this episode. We note, however, that a unanimous Supreme Court of New Jersey, interpreting a similar evidentiary statute of that state, has held both that . . . '[i]f there is a single criminal event in which [the wife] and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness

against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding.' *State v. Briley,* 53 N.J. 498, 506, 251 A.2d 442, 446 (1969).

■ This footnote seemingly indicates a change in the way our Supreme Court now views the issue of spousal incompetency,[6] and we are inclined to follow this more rational approach. We, therefore, hold today that the spouse of an accused is competent under 19 P.S. § 683 to testify against the defendant as to a crime committed against a third person when such crime occurs in the same criminal episode as an act of violence committed by the accused upon the spouse, regardless of whether separate criminal proceedings are involved.

However, another pivotal question which must be discussed is whether, after being rendered competent, the witness spouse can be compelled to testify. Instantly it is necessary to resolve this issue since Mrs. Galloway, through her attorney, stated at the 311 hearing below that she did not wish to testify against her husband. This therefore necessitates an examination of 19 P.S. § 683 to determine whether it is strictly a competency statute or whether it also encompasses a spousal privilege not to testify which will shelter Mrs. Galloway.

We find 19 P.S. § 683 to be a statute of disqualification rather than one which seeks to preserve a common law privilege. The act provides in unequivocal language; "Nor shall husband and wife be competent or permitted to testify against each other . . ." By way of comparison, § 684, which deals with confidential communications between spouses, begins with the same language but there is a distinct difference: "Nor shall either husband or wife be competent or permitted to testify . . . unless this

---

**6.** Ten years prior to the decision in the *Briley* case, our Supreme Court in *Commonwealth v. Clanton,* supra, expressed reservations as to whether the language of the 19 P.S. § 683 could be construed to permit a wife to testify against her husband in a separate trial involving only the charges relating to third persons.

privilege [is] waived upon the trial." By the careful wording of § 684, there is an affirmative effort on the part of the legislature to establish a rule of evidence as well as to recognize a personal privilege. No such effort is apparent in § 683.

Also, as stated in *Wigmore*[7] ". . . privilege implies option. [citations omitted]. A privilege without a waiver becomes a vain use of words, and means no more nor less than an absolute rule of exclusion, a thing of a very different type." In Pennsylvania, under 19 P.S. § 683, the rule that husband or wife may not testify against the other cannot be waived, in any case, by either party. *Commonwealth v. Moore*, 453 Pa. 302, 309 A.2d 569 (1973). This is further evidence that under this statute, there is no personal privilege provided to either spouse not to testify against the other.

■ By the language and import of § 683, it is only the fact that the witness is a spouse which disqualifies him or her from testifying against the other in a criminal proceeding. Once this incompetency is removed by an exception enunciated in the statute, the spouse becomes a compellable witness. Under 19 P.S. 631, any competent witness may be compelled to testify.

■ Even if Mrs. Galloway, in some way, wishes to assert a common law privilege not to now testify, it is apparent that she has in fact waived any such option by fully and completely testifying against appellant at his preliminary hearing in 1971. To allow her to revive this privilege would be to work an injustice. At the time of the first trial, her testimony was not necessary, however, she is, at present, the only living witness to the events surrounding the homicide.

The order of lower court is reversed and the cause is remanded for trial.

7.  8 J. Wigmore, *Evidence*, § 2242. (McNaughton, rev., 1961).