539 A.2d 817

**COMMONWEALTH of Pennsylvania**

**v.**

**Albert Shonk DUNGAN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1987.

Filed Feb. 11, 1988.

Reargument Denied April 8, 1988.

324

326

S.R. Zimmerman, III, Lancaster, for appellant.

Cheryl A. Ondechek, Assistant District Attorney, Lancaster, for Com., appellee.

Before CIRILLO, President Judge, and McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

This appeal is from judgment of sentence imposed following appellant's conviction by a jury of five counts of homicide by vehicle (75 Pa.C.S. § 3732), five counts of homicide by vehicle while driving under the influence (75 Pa.C.S. § 3735) and two counts of driving under the influence of alcohol (75 Pa.C.S. § 3731(a)(1), (4)).

The charges arose out of a tragic accident that occurred April 9, 1984, in which two persons in the van appellant was driving, and three persons in one of the vehicles he struck, were killed. Eyewitnesses provided information that appellant drove his van at a high rate of speed through the intersection of Pennsylvania routes 441 and 23 colliding with the car in which three persons were killed. The van immediately burst into flames, turned over on its side and collided with a second car, the driver of which was injured. The three victims in the first car were killed instantly. A fourth passenger, trapped in the automobile, was subsequently removed by emergency personnel. The van's passengers were thrown from the vehicle; the body of one victim was found underneath the second car struck in the accident; another victim was found on the roadway adjacent to the undercarriage of the van; appellant's wife, Lauren Dungan, who survived, was found on the far side of the car which was initially struck by the van. Appellant was initially found by a witness to the accident partially in and partially out of the space where the windshield had been; this witness dragged appellant to the roadway where he was found by emergency personnel.

Appellant was transported to a hospital in Lancaster where a quantity of blood was drawn pursuant to the hospital's routine concerning trauma patients. This blood was tested for alcohol content and eventually admitted into evidence at trial. Charges were subsequently filed against appellant.

On April 10, 1984, appellant's wife, while a patient in the intensive care unit at St. Joseph Hospital, was interviewed by the Chief of the Marietta Borough Police Department.

At trial, appellant's wife, over objection, was called as a witness by the Commonwealth to testify as to her statements given to the Chief of Police and her recollection at the time of the trial as to the circumstances of the accident and in particular the identity of the driver of the van.

At a jury trial which concluded on July 15, 1985, the jury returned a verdict of guilty on all counts. On July 24, 1985, appellant filed a motion for a new trial and motion in arrest of judgment. The post-verdict motions were denied by the trial court on December 4, 1986, and a presentence investigation was prepared. Thereafter, appellant was sentenced to serve three consecutive jail terms of three to six years each, two concurrent jail terms of three to six years each and pay the costs of prosecution. Appellant subsequently filed a motion to modify sentence which was denied. This appeal followed.

Appellant initially contends the trial court erred in failing to suppress the results of the chemical analysis of defendant's blood since requirements of the Vehicle Code (75 Pa.C.S. § 101 *et seq.*), Clinical Laboratory Act (35 P.S. § 2151 *et seq.*) and regulations promulgated thereunder were not met in that: (a) the person who collected defendant's blood was not a "qualified person" to draw such blood within the meaning of said acts and regulations; (b) the Commonwealth failed to prove the equipment utilized to analyze defendant's blood was approved by the Pennsylvania Department of Health and met the requirements for such approval; (c) the hospital personnel collecting the blood did not have probable cause to believe a violation of section 3731 of the Vehicle Code (driving under the influence of alcohol or controlled substance) was involved; (d) the blood sample was not collected by a physician or his designee; and (e) the hospital testing defendant's blood was not proven to be a clinical laboratory licensed, approved by the Department of Health.

In the alternative, appellant maintains the blood test results which showed an alcohol content of 0.19% should have been suppressed since they were obtained pursuant to

the filing of a criminal complaint alleging a violation of section 3731(a)(4) of the Vehicle Code without the Commonwealth's having had probable cause for defendant's arrest.

The procedure for chemical testing of an individual's blood is provided for in 75 Pa.C.S.A. § 1547(c)(2):

(c) **Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

. . . . .

(2) Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health. For purposes of blood and urine testing, qualified persons means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), known as "The Clinical Laboratory Act." [1]

---

[1.] 35 P.S. § 2151 et seq.

The Pennsylvania Code at section 5.41 of Title 28 sets forth the requirements for those who accept and collect blood specimens:

**§ 5.41. Acceptance and collection of specimens.**

(a) Specimens shall be accepted or collected from patients by a clinical laboratory only when tests are requested on the specimens by a member of the healing arts licensed to practice in Pennsylvania, or other persons authorized by statute, or authorized agents of the foregoing.

(b) No specimen shall be collected by an owner, an employe or other person associated with the clinical laboratory except under one of the following conditions:

(1) The person is a member of the healing arts licensed in this Commonwealth or a laboratory director qualified under the provisions of the Clinical Laboratory Act of 1951 (P.L. 1539) (35 P.S. § 2151 *et seq.*).

(2) The person is collecting the specimen under the direction of a member of the healing arts licensed in this Commonwealth or a laboratory director qualified under the provisions of the Clinical Laboratory Act (35 P.S. § 2151 *et seq.*).

(c) This section does not prohibit the transmission of specimens collected as set forth in subsection (b) under the following circumstances:

(1) To another laboratory licensed under the Clinical Laboratory Act (35 P.S. § 2151 *et seq.*).

■ Carol Pape, a trained phlebotomist, drew appellant's blood at the hospital. Her testimony at trial revealed she drew the blood pursuant to standard hospital procedure whereby blood was drawn from all trauma patients admitted unless otherwise directed by the treating physician. Dr. Roger Eshleman, appellant's treating physician the night of the accident, testified he had ordered several blood tests to be performed on appellant. The trial court, therefore, found appellant's blood was drawn pursuant to hospital policy under directions of a physician and, accordingly, met the qualification requirements of 28 Pa.Code § 5.41. We agree with the trial court that Ms. Pape was qualified according to the Code requirements and was authorized to conduct the test as a person collecting the specimen under the direction of a member of the healing arts. Accordingly, the motion to suppress the results of the test on this basis was properly denied.

■ Appellant next maintains the Commonwealth failed to prove St. Joseph Hospital, the facility in which the clinical laboratory was located, was licensed by the Department of Health at the time of the test and that the equipment used to analyze his blood met the requirements of 28 Pa.Code § 5.103, a regulation which was issued under the Clinical Laboratory Act and provides as follows:

### § 5.103. Blood tests for blood alcohol content.

Equipment used for blood analysis to determine the amount of alcohol in a person's blood which performs the analysis by means of gas chromatography, enzymatic procedures, distillation procedures or diffusion procedures is approved by the Department provided that:

(1) The equipment is located within a clinical laboratory currently licensed by the Department.

(2) The particular brand or model of equipment used and a reagent or procedures relating thereto have not been prohibited by specific notification of the Department under § 5.46 (relating to reagents and equipment).

(3) A clinical laboratory performing blood analysis with the equipment has in effect an approval to provide the special analytical services under § 5.50 (relating to provide special analytical services).

At trial, the only certificate of licensing produced by the Commonwealth was issued for the period extending from August 27, 1984 to August 15, 1985, and was not in effect on April 9, 1984, the date on which appellant's blood was tested. Appellant contends the failure to provide supporting certification pertaining to licensing on the exact date on which the blood test occurred was fatal to the Commonwealth's burden of proving the hospital was licensed. The record shows, however, that Lisa Binkley, a medical technologist employed at St. Joseph Hospital, testified the hospital was currently licensed by the Pennsylvania Department of Health and had been licensed prior to August 27, 1984. Ms. Binkley further testified the certificate from the Department of Health does not itself contain a date, but rather, a small portion in the corner of the certificate has the date attached to it. When a renewal comes in, the old portion is torn off and discarded and the new date attached. The trial court found her testimony sufficient to demonstrate the laboratory at St. Joseph Hospital was properly licensed by the Department of Health and hence, the test was performed in a proper facility.

■ As to the equipment used to analyze his blood, appellant argues the Commonwealth failed to establish the particular brand of equipment used and the procedures relating thereto were not prohibited by the Department of Health (28 Pa.Code § 5.103). The record discloses Ms. Binkley also testified about the actual procedures used in analyzing the blood, specifically testifying that an enzyme reaction was utilized. Section 5.103 provides for analysis by "enzymatic procedures," so long as other Code sections are complied with. Appellant at no time during the trial made any attempt to show the equipment used was prohibited under the statute and accordingly, we find the blood alcohol test was performed on approved equipment in a licensed laboratory by a qualified person and was therefore properly admissible at trial.

■ Appellant next raises the applicability of 75 Pa.C.S.A. § 3755, Reports by emergency room personnel, to the instant case. This section provides for the obtaining of blood samples in emergency rooms from motor vehicle accident victims upon police officer request. *See Commonwealth Department of Transportation v. Emoryo,* 91 Pa.Commw. 580, 498 A.2d 26 (1985). Appellant argues that even if the blood was drawn under proper conditions, the evidence should be suppressed due to the fact there was no probable cause at the time the blood-alcohol test was given. At trial, the police testified they did not request the blood-alcohol test taken at St. Joseph's Hospital. The attending physician testified he ordered the blood test of appellant when appellant arrived in the emergency room, and the phlebotomist, who drew the blood, testified appellant's blood was drawn pursuant to regular medical procedures under the direction of hospital personnel. We note the fourth amendment prohibitions against unreasonable searches and seizures are directed toward governmental action and are inapplicable to a search effected by a private individual not acting as an agent of the government. *Commonwealth v. Cieri,* 346 Pa.Super. 77, 499 A.2d 317 (1985). Accordingly, the blood drawn in this case pursuant to hospital policy was

not subject to the strict probable cause analysis as if the blood had been at police request, and we reject appellant's contention as to this point.

■ Appellant also argues the trial judge erred in failing to suppress the results of the blood analysis as the Commonwealth did not have probable cause to charge appellant with driving under the influence of alcohol pursuant to 75 Pa.C.S.A. § 3731. Probable cause exists where the facts and circumstances within the knowledge of the officer are reasonably trustworthy and sufficient to warrant a person of reasonable caution in believing that the arrestee has committed the offense. *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983).

It is clear from the facts of this case the police had probable cause to arrest appellant for the offense of driving under the influence of alcohol. Chief of Police William D. Roberts testified at the suppression hearing he had spoken with a number of individuals concerning the accident, including other drivers on the road who observed the van immediately prior to the accident, the bartender who had served appellant drinks the same day and the three ambulance attendants at the scene of the accident who detected the odor of alcohol on appellant. One member of the Northwest Life Support Unit present at the scene also testified as to a steering wheel contusion on appellant's chest and the fact appellant had indicated he was the driver of the van. In addition, testimony revealed the police had discovered both full and empty beer cans from the scene of the accident along with a partially full gin bottle and plastic cups which contained the odor of alcohol. *See Commonwealth v. Pelkey*, 349 Pa.Super. 373, 503 A.2d 414 (1985).

■ In a related issue, appellant maintains the Commonwealth charged him with a violation of 75 Pa.C.S.A. § 3731(a)(4) prior to obtaining the results of his blood test and hence, his arrest on a violation of subsection (a)(4) was unconstitutional. We disagree. The Commonwealth filed a criminal complaint against appellant charging him in separate counts with violations of both subsections (a)(1) and

(a)(4) of 75 Pa.C.S.A. § 3731. A violation of subsection (a)(4) is by virtue of his having a blood alcohol content of .10% or more while operating a motor vehicle, and the only way this can be proved is through the results of a blood, breath or urine test.

In *Commonwealth v. Slingerland*, 358 Pa.Super. 531, 518 A.2d 266 (1986), this Court held that subsections (a)(1) and (a)(4) of 75 Pa.C.S.A. § 3731 are cognate offenses. Even though the elements are not identical, the offenses are similar in nature—the operation of a vehicle after alcohol consumption to a degree which renders the vehicle operator a hazard. The *Slingerland* Court noted: "Subsection (a)(4) presumes that an operator with a blood alcohol content of 0.10% or greater is unfit to drive, see: *Commonwealth v. Mikulan*, 504 Pa. 244, 249–251, 470 A.2d 1339, 1341–1342 (1983); whereas subsection (a)(1) requires proof that the defendant was, in fact, incapable of driving because of an excessive consumption of alcohol. Both subsections, therefore, proscribe the same conduct: driving a motor vehicle while under the influence of alcohol." *Id.*, 358 Pa.Superior Ct. at 535, 518 A.2d at 268.

Applying this analysis to this case, we conclude the criminal complaint charging appellant with driving under the influence of alcohol to an extent which rendered him incapable of safe driving was sufficient to allow the Commonwealth to include in the information the cognate offense of driving while appellant's blood exceeded 0.10%.

■ Appellant next alleges trial court error in permitting the Commonwealth to call appellant's wife, over his objection, to testify against him. The Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended (42 Pa.C.S.A. § 5913), provides as follows:

**§ 5913. Spouses as witnesses against each other**

Except as otherwise provided in this subchapter, in a criminal proceeding husband and wife shall not be competent or permitted to testify against each other, except that in proceedings for desertion and maintenance, and in any criminal proceeding against either for bodily injury or

violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them, each shall be competent witness against the other, and except also that either of them shall be competent merely to prove the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other.

The trial court noted this rule is a declaration of the common law rule aimed at preserving marital harmony and trust, *see Commonwealth v. Wilkes*, 414 Pa. 246, 199 A.2d 411 (1964), but also noted the rule provides an exception that allows a spouse to testify in any criminal proceeding where one spouse experienced bodily injury or threats from the other. The court then proceeded to apply the above exception to the facts of this case based upon the rationale found in the case of *Commonwealth v. Galloway*, 271 Pa.Super. 305, 413 A.2d 418 (1979).

In *Galloway*, the defendant's wife had been subjected by him to threats and an assault prior to the intervention of a third party. When that third party and Galloway began to fight, the wife fled. Thereafter, the third party was shot and killed. The murder charge proceeded to court where the defendant was found guilty of second degree murder. After the conviction, charges pertaining to assault and pointing a deadly weapon at the wife were nolle prossed. On appeal, defendant's murder conviction was remanded for a new trial, at which time a competency hearing was held to determine whether defendant's wife was competent to testify against him at the second trial. The trial court determined the wife was not competent to testify against her husband under 19 P.S. § 683 and the Commonwealth was granted permission to appeal.[1] Superior Court held a "spouse of an accused is competent under 19 P.S. § 683 to testify against the defendant as to a crime committed

---

1. 19 P.S. § 683 was repealed effective June 27, 1978 but was substantially reenacted as part of the Judicial Code at 42 Pa.C.S.A. § 5913.

against a third person when such crime occurs in the same criminal episode as an act of violence committed by the accused upon the spouse, regardless of whether separate criminal proceedings are involved." *Galloway, supra,* 271 Pa.Superior Ct. at 312, 413 A.2d 421.

The trial court held the fact charges were not brought against appellant for the criminal acts which caused bodily injury to his wife would not render Mrs. Dungan incompetent in light of the severe bodily injuries she sustained, in addition to the deaths of five other people in the accident.

Appellant contends since no charges were filed against him for any alleged criminal activity toward his wife, there was consequently no "criminal proceeding against [him] for bodily injury or violence attempted, done or threatened upon" (42 Pa.C.S.A. § 5913) his wife, and the *Galloway* exception to the incompetency provision does not apply. Contrary to this view, the prosecution contends allowing Mrs. Dungan to testify was not error, agreeing with the trial court's reliance on *Galloway,* and cites the New Jersey case of *State of New Jersey v. Briley,* 53 N.J. 498, 251 A.2d 442 (1969) (cited with approval in *Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665, 671 (1976)) for the proposition that the incompetency exception should apply to the facts of this case.

In *Briley,* a unanimous Supreme Court of New Jersey, interpreting a similar evidentiary statute of that state, held:

> [I]f there is a single criminal event in which [the wife] and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the case regardless of whether they are tried separately or in one proceeding.

*Id.* 53 N.J. at 506, 251 A.2d at 446.

The Commonwealth argues under the facts of this case appellant *could* have been charged with recklessly endan-

gering his wife, and the *Galloway* holding does not require that a defendant be charged with a crime against the spouse at the time she testifies. In addition, they maintain a "greater interest" is served by recognizing the competency of one spouse to testify against the other as long as no violence is done to the privilege as expressed in a statutory or judicial rule of evidence. *See Briley, supra.*

We believe it was error to admit the testimony of Mrs. Dungan against her husband. Moreover, we do not believe *Briley* supports the interpretation of the statute urged by the Commonwealth and that *Galloway* is distinguishable from the facts of this case. Initially, we note in *Galloway,* the defendant had been charged with a criminal act against his wife which we believe is required for the exception to incompetency to apply. This Court, in declaring the wife competent to testify in the *Galloway* murder trial, held it did not matter that the charges against Galloway for criminal violence toward his wife were prosecuted in proceedings separate from those involving the homicide charges—the crucial factor was that all of the charges arose out of the same criminal episode. Herein, no charges whatsoever were filed against appellant for any alleged criminal activity toward his wife. Rather, the trial court broadly interpreted the statute to include within its parameters unintentional conduct on the part of a spouse that results in serious injury to his wife on the basis of injury to a third party arising out of the same incident. We believe the statute was not enacted to apply to the facts of this case, an automobile accident resulting in serious injury to a spouse, but instead are persuaded the exception to the incompetency rule was designed to protect those spouses victimized by an act of intentional violence committed upon them by an accused spouse.

As to the Commonwealth's reliance on *Briley, supra* we draw its attention to the later New Jersey case of *State of New Jersey v. Eason,* 138 N.J.Super. 249, 350 A.2d 506 (1975). In *Eason,* the trial judge relied on *Briley* and held that so long as the spouse was in fact a victim or an

intended victim of the entire event, the failure of the prosecution to initiate criminal proceedings on a complaint was immaterial.

On appeal, however, the court rejected this interpretation and stated:

> *Briley* indicates that while the wife's competency and compellability to testify against her husband regarding a crime committed by him against a third party may not be limited if the charges against him that relate to her are of lesser extent or are tried in a different proceeding than those relating to the third party, there must nevertheless be charges of some kind pending against the husband for the alleged crime of which the wife was a 'victim.'

*Id.* at 255, 350 A.2d at 509.

The *Eason* appellate court further buttressed its interpretation by quoting the following language in *Briley*.

> [I]n our view under the circumstances of the case Mrs. Briley would have been a competent and compellable witness in the murder case whether a charge of assault and battery upon her was instituted in the municipal court or the court for atrocious assault and battery had been severed and the murder charge tried separately.

*Id.* at 255, 350 A.2d at 509 (citing *Briley*, 53 N.J. at 504, 251 A.2d at 445).

Applying this law to the case presently before us, we submit the exception to incompetency is triggered in those situations in which criminal proceedings are initiated by intentional violent conduct directed at the spouse and failure to initiate such proceedings renders the testifying spouse incompetent.

■ Therefore, having determined the trial court erred in admitting the testimony of Mrs. Dungan over appellant's objection, we proceed to analyze whether the error was harmless. The standard of review for determining harmless error has been set forth in the following manner:

> an error cannot be held harmless unless the appellate court determines that the error could not have contribut-

ed to the verdict. Whenever there is a ' "reasonable possibility" ' that an error ' "might have contributed to the conviction," ' the error is not harmless. *Commonwealth v. Davis*, 452 Pa. [171] at 178, 305 A.2d [715] at 719 [1973], quoting *Chapman v. California*, 386 U.S. [18] at 24, 87 S.Ct. [824] at 828 [17 L.Ed.2d 705 (1967)]. *Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978); *see also Commonwealth v. Kellum*, 339 Pa.Super. 513, 489 A.2d 758, 762 (1985).

In directing the harmless error test to the facts of this case we believe that even without the testimony of Mrs. Dungan, the evidence appellant was the driver of the van was conclusive and would compel a jury to determine as much. The independent evidence on the record included appellant's admission to the ambulance attendant, Kay Bleecher, that he was the driver of the van and evidence of contusions on his chest caused by the steering wheel, which support the finding that he was the driver. Additionally, he was first discovered after the accident partially in and out of the windshield and he was the owner of the van. Despite close cross examination, the Bleecher testimony was unshaken and went unrefuted. Contrary to appellant's assertion that he was compelled to testify because of his wife's testimony, it would have been equally necessary for him to testify in the face of Bleecher's testimony and his physical position when first discovered. We, therefore, find any error in permitting appellant's wife to testify was harmless.

■ Appellant also contends the trial court improperly permitted the introduction of evidence of the van's registration through a Pennsylvania Department of Transportation certificate. This certification identified appellant as the registered owner of the van. Appellant argues the evidence was irrelevant and prejudicial and therefore should not have been permitted. It is well settled that evidence which tends to establish facts material to a criminal prosecution or which tends to make a fact at issue more or less probable is

relevant. *Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67 (1975); *Commonwealth v. Stewart*, 461 Pa. 274, 336 A.2d 282 (1975). In addition, the admission of evidence is a matter within the discretion of the trial judge, and absent an abuse of discretion, there is no reversible error. *Commonwealth v. Barnhart*, 497 Pa.Super. 616, 497 A.2d 616 (1985). We find no error in the trial court's decision. Appellant himself testified he owned the van and evidence of ownership was properly before the jury for their consideration.

 Appellant alleges the trial court erred in denying his motion in arrest of judgment. Specifically, he maintains if all of the evidence that was allegedly improperly admitted was excluded, the remaining evidence would be insufficient to sustain the verdicts. The effect of a motion in arrest of judgment is to admit all facts which the Commonwealth's evidence tends to prove. *Commonwealth v. Davis*, 477 Pa. 197, 383 A.2d 891 (1978). The entire record must be considered in evaluating the sufficiency of the evidence. *Commonwealth v. Rawles*, 501 Pa. 514, 462 A.2d 619 (1983). A review of the record indicates the evidence was more than sufficient to support the verdicts. In light of the testimony and evidence presented which proved appellant was the owner and driver of the van at the time of the accident, appellant's motion in arrest of judgment was properly denied.

 Next, appellant challenges the multiple sentences imposed by the trial court on the basis that it is unlawful for a court to impose multiple sentences for multiple deaths resulting from a single accident.

The Supreme Court held in *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984), that where it is legislatively authorized, it is legal to impose multiple sentences upon a defendant whose single unlawful act injures multiple victims. There, it was held that where the legislature

intended to preclude multiple punishments for multiple injuries resulting from a single act, it has expressly done so. *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976). In *Commonwealth v. Zaengle*, 345 Pa.Super. 124, 497 A.2d 1335 (1985) this Court concluded the legislature authorized multiple sentences for multiple deaths resulting from a single violation of the homicide by vehicle statute, 75 Pa.C.S.A. section 3732.

A review of the homicide by vehicle while driving under the influence statute, 75 Pa.C.S.A. § 3735, leads us to determine the multiple sentences imposed are legislatively authorized. The operative language crucial to our conclusion reads: "Any person who unintentionally causes the death of another person ..." and is identical to that language in section 3732 which is distinguished only by the underlying violation committed in the course of the homicide. Pursuant to the test set forth in *Frisbie*, the multiple sentences for multiple deaths occurring in a single violation of this section are legislatively authorized and were, therefore, lawfully imposed. *Also see Commonwealth v. Williams*, 514 Pa. 124, 522 A.2d 1095 (1987).

█ Appellant's final contention is that the total length of the sentence imposed is excessive and constitutes an abuse of discretion. Appellant was found guilty of five counts of homicide by vehicle and five counts of homicide by vehicle while driving under the influence of alcohol. As noted above, the court imposed a sentence of not less than three nor more than six years in a state correctional institute on each of the five counts of homicide by vehicle while driving under the influence. Counts eight, nine and ten are consecutive; counts six and seven are concurrent to the other sentences.

Pennsylvania Rule of Appellate Procedure 2119(f) requires that the appellant's brief contain a concise statement of the reasons relied upon for allowance of the appeal of the discretionary aspects of sentencing which appellant is rais-

ing to enable our Court to determine whether it is a "substantial question" which would allow our discretionary jurisdiction to be invoked. *See* 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987).

In *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987), *Commonwealth v. Chase*, 365 Pa.Super. 572, 530 A.2d 458 (1987) and *Commonwealth v. Rumbaugh*, 365 Pa.Super. 388, 529 A.2d 1112 (1987), we held that when the appellee, or party opposing review of the sentence, fails to object to such procedural violations concerning presentation of discretionary appeals as to sentencing (Rule 2119(f)), those violations are waived. As stated above, the Commonwealth did not object, therefore, we must determine whether appellant has presented a suitable " 'statement of question' by brief reasons indicating a 'substantial question' exists before discussion of the merits." *Commonwealth v. Lapcevich*, 364 Pa.Super. 151 155, n. 2, 527 A.2d 572, 574, n. 2 (1987) (citing *Tuladziecki, supra*); *Rumbaugh supra.*

Our examination of appellant's claim shows he has failed to establish that a substantial question is involved in positing his sentence of three consecutive (rather than concurrent) terms of imprisonment is excessive and an abuse of discretion. As discussed previously, multiple sentences for multiple deaths occurring in a single violation of this section are legislatively authorized and were therefore lawfully imposed by the sentencing court. These sentences were within the statutory limits and the three-year mandatory term for homicide under 75 Pa.C.S. § 3735(b) is not governed by the sentencing guidelines. The trial judge properly imposed the mandatory sentence on the five homicides and his discretion to impose three consecutive three-year terms and two concurrent three-year terms requires no further justification than the incredible carnage and terrible loss due to appellant's actions. Indeed, a judgment of five consecutive minimum terms could be just as well justified.

Judgment of sentence affirmed.