STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN LEE BRILEY, III, DEFENDANT-APPELLANT.

Argued January 7, 1969—Decided March 31, 1969

*Mr. Claude J. Minter,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Peter Murray,* Public Defender of the State of New Jersey, attorney).

*Mr. Michael R. Imbriani,* Somerset County Prosecutor, argued the cause for respondent.

The opinion of the court was delivered by

FRANCIS, J.   Defendant John Lee Briley was charged by indictment with the murder of Benjamin Reaves, Jr. and with the commission of an atrocious assault and battery upon Paulette Briley, defendant's wife. Since the offenses arose out of a single event, they were joined in individual counts of one indictment. Defendant's pretrial motion to sever the counts and to try them separately was denied. A jury trial resulted in a conviction of manslaughter and atrocious assault and battery, followed by imposition of concurrent sentences of 7 to 10 years imprisonment on the homicide count  and 3 to 5 years on the atrocious assault and battery count. Appeal directly to this Court followed under the original form of *R. R.* 1:2–1(*c*).

The principal ground of appeal is that as defendant's wife Paulette Briley should not have been allowed to testify against him except with regard to the atrocious assault and battery committed upon her. More particularly, the trial court is said to have erred in failing to exclude her testimony against him on the charge of murdering Reaves. Basically the contention is that such testimony is made incompetent by *Rule* 23(2) of the New Jersey Rules of Evidence, *N. J. S.* 2*A*:84*A*–17(2). The rule provides:

"The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant."

Some reference to the facts is necessary to an understanding of the alleged trial error. When this criminal event occurred on November 6, 1966, defendant, age 28, and Paulette age 18, had been married for three years. Their

marriage was stormy; he was suspicious of her fidelity although his own constancy apparently left much to be desired. On Thursday November 3 they quarreled because defendant found his wife and Reaves embracing. She then left their home with her baby and stayed for the next three nights at the Rainbow Motel on Route 22, Green Brook, N. J. The State produced testimony from Mrs. Briley's brother that during the quarrel Briley told Reaves if he ever caught him with Paulette he would kill him.

On Sunday morning, November 6, Reaves came to the motel and picked up Mrs. Briley and the baby. They got into his car and Reaves was about to start it when Briley, who had been looking for his wife, observed them. According to Mrs. Briley he ran toward the car, armed with a shotgun, part of the stock and barrel of which had been sawed off. Briley claimed that as Reaves got out of the car he reached into his back pocket for a knife. In the course of the ensuing struggle the gun was discharged, and Reaves died shortly thereafter from a gunshot wound in the abdomen. At the trial Briley said that he did not have his finger on the trigger when the gun went off and that the firing occurred somehow in the struggle. He maintained also that his pretrial statement that he "had shot him in the stomach" did not give a true picture of the accidental nature of the shooting. His intention was to "frighten Reaves, not to shoot him."

In her testimony, which was objected to in reliance upon *Rule* 23(2), Mrs. Briley denied seeing a knife in Reaves' hand. She heard the gun go off and saw Reaves fall. Then she saw her husband raise his arm as if he was striking the fallen man. The autopsy showed (in addition to the shotgun wound) that the deceased had lacerations of the scalp and abrasions of the forehead, right eye, nose, kneecaps and hands.

Mrs. Briley put her baby on the seat of the car, got out of the passenger side and started to run down the road. Briley pursued, intending to hit her because she had gone to the

motel with Reaves. She tripped and fell and he overtook her as she lay on the ground. He was still carrying the shotgun which was then empty. Apparently while asking what she was doing at the motel "with that man," he struck at her with the gun, causing the injuries which resulted in the indictment for atrocious assault and battery.

During the trial when defendant's wife was produced as a witness for the State, the pretrial motion to sever the homicide and atrocious assault and battery counts was renewed and again denied. Since the two alleged crimes arose out of a single event or transaction, joinder in separate counts of a single indictment was proper. *R. R.* 3:4–7; 3:5–6. Determination of the claim of alleged prejudicial joinder involved an exercise of discretion by the court. *R. R.* 3:5–7. Obviously the refusal to sever the counts did not constitute an abuse of discretion. See *State v. Coleman*, 46 *N. J.* 16, 24 (1965), *certiorari* denied 383 *U. S.* 950, 86 *S. Ct.* 1210, 16 *L. Ed. 2d* 212 (1966). Defendant then moved to limit his wife's testimony to the charge of atrocious assault and battery upon her and to exclude it with respect to the murder. This too was denied. Her statements as to the entire event were admitted without qualification in support of both charges against defendant. Moreover, in charging the jury the trial judge imposed no limitation on the jury's use of her testimony in reaching a decision on defendant's guilt. Defendant made no objection to the charge.

At the close of the case defendant moved for a judgment of acquittal as to the atrocious assault and battery on the ground that the proof showed no more than assault and battery. The court denied the motion, holding that a factual issue for jury determination was presented. On this appeal from the ruling, we have examined the entire record, and although the evidence to show that the offense against Mrs. Briley was atrocious assault and battery rather than assault and battery is not too substantial, the circumstances of the event, the nature of the attack and the injuries inflicted upon her lead to the conclusion that the trial court was

justified in submitting the issue for jury determination. Defendant's argument on this point has a double thrust. If the attack upon his wife was an assault and battery, that infraction, being a disorderly person offense, was cognizable only in the municipal court. Therefore he urges it could not have been joined properly as a separate count in the murder indictment because the county court had no jurisdiction.[1] Since the county court lacked jurisdiction of the assault and battery it follows, his argument continues, that it was clear error to allow the State to use her as a witness against him in the murder prosecution. We reject the contention because in our view under the circumstances of the case Mrs. Briley would have been a competent and compellable witness in the murder case whether a charge of assault and battery upon her was instituted in the municipal court or the count for atrocious assault and battery had been severed and the murder charge tried separately.

This brings us directly to defendant's contention that his wife should not have been allowed to testify against him on the indictment for murdering Reaves. He says that since she was not the victim of that separate and distinct crime, *Rule 23(2) supra,* barred her testimony on that subject unless he consented that she testify.

The early common law excluded husbands and wives from testifying against each other in any criminal proceeding in which the other was a defendant. A number of reasons were assigned in support of the rule. The husband and wife were considered one, and preservation of that concept was thought to be of paramount societal importance.

---

[1] We need not decide whether the Superior Court, to which all indictments are returnable, has jurisdiction to hear the disorderly-person offense of assault and battery as a lesser included offense when a defendant is on trial for atrocious assault and battery; nor, assuming such jurisdiction does exist, need we decide at this time what, if any, procedural steps might be necessary to facilitate complete disposition of both offenses. See, 1947 *Constitution, Art.* VI, § III, *par.* 2; *R. R.* 3:4–1; but compare, *State v. McGrath,* 17 *N. J.* 41 (1954), a 4–3 decision of this Court.

The courts were interested in protecting the sanctity and tranquility of the marriage relationship. They were opposed to anything tending to promote domestic strife. *Munyon v. State,* 62 *N. J. L.* 1 *(Sup. Ct.* 1898). But an exception to the rule was soon recognized. Whenever any criminal act of violence was committed upon either spouse by the other, the injured spouse was permitted to testify against the offender. *State v. Marriner,* 93 *N. J. L.* 273 *(Sup. Ct.* 1919). The qualification came into existence in part as a matter of necessity because assaults upon one spouse by the other were usually committed in the privacy of their home and with no witnesses present. The courts looked upon the modification as protecting the injured spouse as an individual *and* as a member of the public. A husband who assaults his wife commits an injury upon her and upon the society of which they are members. It is for the injury to the public, committed upon it through the person of his wife, that he is punished and others are deterred from doing likewise. And it is therefore, for the protection of society, and of the wife as a member of society, that she is made competent as a witness against him. He being an offender against the public and not the wife alone, she is made competent to testify as a witness for the public. And that competency cannot be disclaimed by her. See *Turner v. State,* 60 *Miss.* 351, 45 *Am. Rep.* 412 (1882) ; *State v. Antill,* 176 *Ohio St.* 61, 197 *N. E.* 2d 548, 550–551 (1964) ; *Wyatt v. United States,* 362 *U. S.* 525, 80 *S. Ct.* 901, 4 *L. Ed.* 2d 931 (1960) ; *State v. Kollenborn,* 304 *S. W.* 2d 855, 860–861 *(Mo. Sup. Ct.* 1957) ; *Commonwealth v. Allen,* 191 *Ky.* 624, 231 *S. W.* 41, 42–43, 16 *A. L. R.* 484 *(Ct. App.* 1921).

██ The common law privilege has been made statutory in variant forms in most states. 2 *Wigmore, Evidence* § 488 *(3d ed.* 1940) ; 8 *Wigmore, Evidence* §§ 2239, 2245 *(McNaughton rev.* 1961). In its current form in New Jersey as quoted above, it is incorporated under the "Privileges" section of the Rules of Evidence as *Rule* 23(2). Privileges which enable a person to prevent another from testifying against

him or which permit him to decline to testify himself, whether they arise from the marital status, or physician and patient relationship, or relate to self-incrimination or otherwise, are obstacles in the path of the normal trial objective of a search for ultimate truth. They are accepted only because in the particular area concerned, they are regarded as serving a more important public interest than the need for full disclosure.

It is the basic policy of our law that every person is qualified and compellable to be a witness and to give relevant and competent evidence at a trial. *Rule 7* of the New Jersey Rules of Evidence; *N. J. S. 2A:84A–16.* Privileges expressly granted to persons to refuse to testify or to prevent another from testifying are exceptions to that policy. See *Rules 23–32, 34, 36–40; N. J. S. 2A:84A–17 to 32.* Since rigid adherence to the letter of the privileges promotes the suppression of truth, they should be construed and applied in sensible accommodation to the aim of a just result. In view of the obvious policy of the law to enlarge the domain of competency of witnesses and to adapt rules of evidence to the successful development of the truth, competency should be regarded as the rule and incompetency as the exception. This approach is plainly applicable to the so-called marital privilege. See *Funk v. United States,* 290 *U. S.* 371, 379–382, 54 *S. Ct.* 212, 78 *L. Ed.* 369 (1933) ; *Shores v. United States,* 174 *F. 2d* 838, 11 *A. L. R. 2d* 635 (*8th Cir.* 1949) ; *Wyatt v. United States, supra;* Note, 38 *Va. L. Rev.* 359 (1952). It follows therefore that when a greater public interest is served by recognizing the competency of one spouse to testify against the other and no violence is done to the privilege as expressed in a statutory or judicial rule of evidence, the testimony should be received.

In the present case, *Rule 23* (2) says that the spouse of the accused in a criminal action shall not testify in such action "* * * unless * * * the accused is charged with an offense against the spouse * * *." Sensibly construed this language does not restrict the testimony of a wife against

a husband to the particular criminal action in which she alone is the victim of his crime. If there is a single criminal event in which she and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding. And, in this connection, it should be immaterial that the offense against the wife does not reach the same dimensions of criminality as it does against the third-party victim. For example, if the offense against the wife is simple assault and battery — a disorderly person infraction cognizable in a municipal court — the fact that such a complaint is pending in that court should not destroy her competency as a witness against her husband in the trial of indictable offenses perpetrated upon the other victims of the criminal event.

The problem presented here is a novel one in New Jersey and little law is to be found elsewhere. It was considered, however, by the Supreme Court of Nebraska in *Miller v. State,* 78 *Neb.* 645, 111 *N. W.* 637 (1907). There the defendant-husband entered the dwelling house of his wife's parents and shot the mother, father and wife, wounding them. An information was returned against him containing separate counts for each shooting. His motion for a separate trial on each count was denied. At the single trial the wife testified to the entire event in support of the distinct crimes committed against her and her parents. The Nebraska statute permitted a wife to testify against her spouse "in a criminal proceeding for a crime by one against the other." In answer to the husband's claim that it was error to allow his wife to testify in support of the charges of crimes against the parents, the Supreme Court said:

"This statute permitted Mary Muller [his wife at the time of the shooting] to testify as to the crime committed against her, and it appears that the shots fired by the defendant, at her father and mother, as well as the one fired at her, were so closely connected in point of time as to be a part of the *res gestae.* Hence, all of her testimony was properly received." 111 *N. W.,* at 638–639.

On the other hand, the Supreme Court of Appeals of West Virginia reached a contrary result. In *State v. Woodrow,* 58 *W. Va.* 527, 52 *S. E.* 545, 2 *L. R. A., N. S.* 862 (1905) the wife was holding her 14-month old child in her arms. A shot was fired by the husband passed through the child's head, killing it, and then wounding the wife. At the trial of the indictment for murder of the child the wife described the crime over the objection of her husband. The resulting conviction was reversed on appeal. It was held, over a strong dissent, that even though a single criminal event was involved, the wife, not being the victim of the crime for which the husband was being tried, was not competent to testify as a witness against him.

The Supreme Court of Missouri in *State v. Kollenborn, supra,* criticized and disagreed with the *Woodrow* opinion as "somewhat narrow and strained," and pointed out that thereafter the West Virginia Legislature overcame the ruling by express statutory change. In *Kollenborn,* the statute (unlike our own *Rule* 23(2)) did not expressly permit testimony by a wife against her husband when the case being tried involved an assault by him upon their child, and not upon her. But the court took the view that any injury to a spouse's child is a wrong to the spouse and his or her testimony becomes admissible against the other. It said: "It is, in our opinion, contrary to all principles of morality and justice to close the mouth of the only witness in such a case as the present. What is not good sense should not be the law." 304 *S. W. 2d,* at 864. We agree not only with the Missouri court's criticism of *Woodrow,* but also with the ruling in its own case that the wife was a competent witness against her husband.

In *People v. Pittullo,* 116 *Cal. App.* 2d 373, 253 *P. 2d* 705 (1953), a husband was prosecuted for an assault with a

deadly weapon upon his wife and another. It was held that the wife was a competent witness as to both assaults. We recognize that the language of the California statute applied in *Pittullo* is broader than our *Rule* 23(2) in that the spousal disqualification is eliminated expressly in a criminal action against the one spouse for a crime committed upon a third person while the defendant-spouse was engaged in committing a crime against the witness-spouse.

In our judgment this California enactment represents a rational solution of the ancient disqualification of spouses as witnesses against each other. On principles of public policy it is much more important in situations like the present case to make the wife's testimony available than to cloak it with the anachronistic restraint of the common law. Even though the same provision does not appear specifically in *Rule* 23(2), in our view its language, the spirit revealed thereby, as well as the general aim of the Rules of Evidence, *N. J. S.* 2*A*:84*A*–1 *et seq.* to make competency the rule and exclusion the exception, furnish ample justification for construing *Rule* 23(2) in accordance with the sense of the California statute. As we have already stated above, it is wholly consistent with the quest for truth and with present-day standards of achieving justice to regard the wife's testimony in situations like the one now before us as competent and compellable against the defendant-husband. Thus, in view of subsection (*b*) of the rule, the requirement for a spouse's consent mentioned in subsection (*a*) must be regarded as applicable only to a criminal proceeding in which the wife's role is strictly that of a witness, as distinguished from that in which she is a victim or an intended victim, or one victim in a unitary event in which her husband is a criminal actor.

For the reasons stated the judgment of conviction is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL and SCHETTINO — 5.