180 N.J. Super. 75 (1981)
433 A.2d 816
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VINCENT J. INFINITO AND MARIE A. INFINITO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1980.
Decided July 24, 1981.
*76 Before Judges FRITZ, MILMED and JOELSON.
Katharine J. Sweeney argued the cause for appellants (Sweeney, Bozonelis, Staehle and Woodward, attorneys).
Debra L. Stone, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Robert E. Rochford and Debra Stone, Deputy Attorneys General, of counsel).
PER CURIAM.
Indicted in 13 counts, defendants, who are husband and wife, were convicted of larceny of property over the value of $500 and of conspiracy to commit the substantive crime. Because we are satisfied from the whole record that the guilt of both defendants has been overwhelmingly demonstrated in a trial fair to both the State and defendants, we affirm.
Defendants assert a number of grounds, each of which except one appears only in the brief on a pretrial motion for leave to appeal the refusal of the trial judge to dismiss all the counts of the indictment on defendants' motion. Defendants were given leave to rely on that brief as well as on their appeal brief.
The sole point asserted in the appeal brief is the only one which caused us any pause. There defendants complain of the failure of the trial judge to sever on one or more of the following grounds: (1) error in the Bruton-Young (Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); State v. Young, 46 N.J. 152 (1965)) determination; (2) rejection by the trial judge of Evid.R. 2, 23 and 28[1] in the circumstances *77 of this case; (3) "the nature of the State's charges and proofs mandated severance in light of defendants' marital status under the test of fundamental fairness." Even here, were it not for the obvious guilt of defendants, only the Evidence Rule point would attract our attention.
The marital privilege embraced in Evid.R. 23(2) immediately inspires intellectual interest, in the circumstances of this case. This is not because of the recent marked and consistent attrition of the spousal unity concept (Romeo v. Romeo, 84 N.J. 289 (1980); Immer v. Risko, 56 N.J. 482 (1970)). It is not because the offense is a criminal offense against the public and therefore upon the society of which they are members (see State v. Briley, 53 N.J. 498 (1969)). Nor is it because the victims here, considering their social history and mental condition, might have been considered children to whom defendants stood in the place of a parent (Evid.R. 23(2)(b)).[2] And it is not because of the likelihood that the testifying of the Infinitos before the grand jury, on waiver of immunity, with respect to conversation had with each other constituted a waiver of the privilege, or in terms of Evid.R. 23(2)(a), a "consent." Rather it is the reflection that if defendants' argument were to succeed, a procedural rule intended solely to promote marital harmony becomes, if not a suit of armor against the weapons of truth ascertainment in a criminal prosecution, at least a bullet-proof vest.
But as observed by counsel for defendants at the Bruton-Young hearing, these are complicated and highly sophisticated questions. We see no reason to undertake them in a matter where the guilt is so clear that we may declare our belief that any error was harmless beyond a reasonable doubt, thus satisfying *78 the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). State v. Macon, 57 N.J. 325 (1971).
Defendants assert that "a husband and wife cannot criminally conspire under New Jersey law." Citing State v. Carbone, 10 N.J. 329, 336 (1952), and two trial court cases which arrived at opposite conclusions (State v. Pittman, 124 N.J. Super. 334 (Law Div. 1973), and State v. Struck, 44 N.J. Super. 274 (Cty.Ct. 1957)), as the only New Jersey authority, they insist that "the common law basis of N.J.S.A. 2A:98-1" should not "be lightly discarded so as to permit the State to prosecute defendants for conspiracy." We recognize our obligation not to depart from pronouncements of our court of last resort. In re Education Ass'n of Passaic, Inc., 117 N.J. Super. 255, 261 (App.Div. 1971), certif. den. 60 N.J. 198 (1972). Considering the immense sociolegal changes which have taken place in the last 30 years (e.g., Romeo v. Romeo, Immer v. Risko, both supra) as well as the precise issue determined in State v. Carbone, supra, we do not consider the question as to whether the common law in New Jersey today prohibits prosecution of spouses for conspiracy to be a matter having been "squarely decided" (In re Education Ass'n of Passaic, Inc., supra at 261) by our court of last resort. Accordingly, we are free to choose State v. Pittman, supra, over State v. Struck, supra, as we do, substantially for the reasons Judge McGowan sets forth. We would add Romeo v. Romeo, supra, to his citation of Immer v. Risko, supra.
Other issues raised by defendants include:
The grand jury's misconduct in returning the indictment upon insufficient proofs requires its dismissal.
Government pre-indictment, bad faith delay have materially prejudiced defendants' ability to defend pending charges resulting in a denial of their constitutional rights to due process of law.
The glaring and factual mistakes which characterize the proceedings already had dictate [sic] resubmission of the matter to a new panel.
Additionally, in the brief on the motion for leave to appeal they complained of overwhelming prejudice to them as a result of bad faith, delay and mistakes by the State. We are satisfied *79 that all of these issues are clearly without merit. R. 2:11-3(e)(2).
Affirmed.
JOELSON, J.A.D., concurring.
Ordinarily a motion for severance in a case where a husband and wife are codefendants should be liberally granted if it appears that a spouse who wishes to testify in his or her own defense would do so in a way that would incriminate the codefendant spouse. 2 Weinstein and Berger, Evidence, § 505[04] (1975); "Marital Privileges and the Right to Testify," 34 Univ.Chi.L.Rev. 196 (1966).
Evid.R. 23(2) prohibits the spouse of an accused in a criminal action from testifying in such action, with certain exceptions which do not here pertain. Evid.R. 28 prohibits the disclosure of confidential communications between spouses. Evid.R. 2 includes both these rules among those not subject to being relaxed. Furthermore, after a report by the State Rules of Court Review Commission, they were among the privileges of an accused enacted into law, N.J.S.A. 2A:84A-17 et seq. The Commission noted that the privileges established by the rules of evidence "reflect legislative determination of public policy considered to be more important than the evidence excluded."
The majority opinion cites Romeo v. Romeo, 84 N.J. 289 (1980), and Immer v. Risko, 56 N.J. 482 (1970). Neither of these cases disturb statutes or rules of evidence dealing with evidentiary privileges of an accused. Furthermore, they are civil cases which make it clear that marital unity and concord may be enhanced by allowing a spouse to sue his or her spouse under certain circumstances. "Domestic harmony may be more threatened by denying a cause of action than by permitting one where there is insurance coverage." Immer at 489.
Defendants contend that because they were tried jointly, each was thereby effectively discouraged from testifying in his or her own defense because their testimony would have required the *80 abandonment of the evidentiary marital privilege. In other words, they assert that in a joint trial they were faced with the Hobson's choice of declining to testify in their individual defenses or testifying adversely to the interests of the spouse. This argument would have been persuasive if either of them had unequivocally made a pretrial motion for severance based upon the marital privilege and had proffered to the court the exact nature of the expected testimony. Instead, their pretrial motions for severance were based upon the Bruton-Young problems of redaction. Furthermore, even when at a point well along in the trial, they requested a ruling on whether they would be permitted to testify in their own defenses, they refused to state firmly whether they would do so if permitted, or what the nature of their testimony would be.
If either defendant had promptly made a motion for severance based upon the evidentiary marital privileges and candidly divulged to the court that he or she would testify and the content of the testimony, this appeal would have more merit. However, having elected the strategy of playing their cards close to the vest, they should not be allowed to complain successfully now that their strategy has backfired.
Furthermore, as the majority opinion points out, defendants' guilt has been overwhelmingly demonstrated. Testifying voluntarily before the grand jury, they made damaging statements which were read to the jury at the trial. This grand jury testimony as well as much other testimony at the trial would effectively counter any protestations of innocence on their part.
Concerning the question whether spouses may be charged with conspiracy, I agree with the majority that they may be. However, this issue is of little consequence because both were convicted for larceny as well as conspiracy, and their sentences for conspiracy were concurrent with their probationary sentences for larceny.
NOTES
[1] He forecast this result in a premature, advisory ruling, at the end of the State's case, as a result of which (we are told) neither defendant chose to testify.
[2] Before the grand jury Vincent Infinito testified, "... they were to be, not tutored, but they were to be almost part of the family as a unit to live within the household."