229 N.J. Super. 501 (1988)
552 A.2d 184
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD SANTORO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 22, 1988.
Decided December 23, 1988.
*503 Before Judges ANTELL, HAVEY and BROCHIN.
Alfred A. Slocum, Public Defender, attorney for appellant (Marcia R. Steinbock, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Linda K. Calloway, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Tried to a jury, defendant was convicted of armed robbery, N.J.S.A. 2C:15-1, and thereafter sentenced to a 20 year custodial term with a 10 year period of parole ineligibility. On this appeal, he challenges the judgment below on the ground of claimed error in the exclusion of evidence, error in the admission of testimony as to an impermissibly suggestive identification, ineffective assistance of counsel, the improper admission of defendant's prior convictions and excessiveness of sentence.
At around 10:00 p.m. on March 30, 1985, a gunman robbed a convenience food store then being operated by Kathleen Pavelec. After the intruder left, Pavelec notified the police who responded promptly. Approximately one week after the robbery, Pavelec identified defendant from an array of eight photographs, and approximately two months later she selected him in person from a line-up of five men. We first consider defendant's contention that because the out-of-court identification of defendant was the product of an impermissibly suggestive procedure it should not have been received in evidence.
*504 The test on review hereof is whether the trial judge could reasonably conclude that the identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Madison, 109 N.J. 223, 232-233 (1988); State v. Ford, 79 N.J. 136 (1979); rev'g on dissent 165 N.J. Super. 249, 254 (App.Div. 1978); State v. Bono, 128 N.J. Super. 254, 262 (App.Div. 1974), certif. den. 65 N.J. 572 (1974). The defendant ordinarily bears the burden of demonstrating by a preponderance of the evidence that the pretrial identification procedure was so suggestive as to result in a substantial likelihood of misidentification. State v. Hurd, 86 N.J. 525, 548 (1981).
If the out-of-court identification was conducted under suggestive procedures, we must determine whether that identification is otherwise supported by indicia of reliability. Suggestiveness alone is not fatal. Manson v. Brathwaite, 432 U.S. 98, 109-114, 97 S.Ct. 2243, 2250-2253, 53 L.Ed.2d 140 (1977); State v. Johnson, 138 N.J. Super. 579, 586 (App.Div. 1976), certif. den. 71 N.J. 340 (1976). As stated by the United States Supreme Court, "[R]eliability is the linchpin in determining the admissibility of identification testimony...." Manson v. Brathwaite, supra, 432 U.S. at 114, 97 S.Ct. at 2253. The purpose of assessing reliability is to determine whether the identification was prompted by the eyewitness' own recollection of the crime or by the suggestive manner in which the identification procedure was conducted. State v. Farrow, 61 N.J. 434, 451 (1972), cert. den., sub nom. Farrow v. New Jersey, 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973).
Several indicia of reliability militating against suggestiveness were noted by the United States Supreme Court in Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and reiterated in Manson v. Brathwaite, supra, in the following language:
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the *505 criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. [Manson, 432 U.S. at 114, 97 S.Ct. at 2253].
Defendant's claim of impermissible suggestiveness relies mainly on the contention that although Mrs. Pavelec usually wears reading glasses, she did not have them on at the time of the incident and that the men in the line-up were not sufficiently similar in appearance or speech characteristics to preclude a mistaken identification. He points out that Pavelec described the robber as being 5'8" in height, whereas defendant is 6'1", and emphasizes that at the time of the identification, she was not in the best emotional condition to view a line-up since her mother had just suffered a heart attack and was in a hospital.
The foregoing facts do not compel defendant's proffered conclusion. Under the totality of the circumstances, both the photographic identification and the line-up could be found reliable. The gunman was in the store for approximately three minutes, standing no more than three feet away from Pavelec during the episode. The store was brightly lit, and it was only a week after the robbery that she made the photographic identification. Except for the discrepancy in height, the description that she furnished to the police conformed to defendant's appearance.
Because of his record of previous convictions, defendant determined not to take the stand on his own behalf. Although he first displayed some indecisiveness, he finally made up his mind to proffer his wife Anita as a witness to testify that when the crime was committed he was at home with her. At the time of the trial, defendant and his wife were separated and she had filed serious criminal charges against him which were then pending. Because of the couple's hostile posture toward one another, defendant's attorney counselled him against his chosen course of action. Nevertheless, defendant insisted on proceeding as he had decided, and Mrs. Santoro was subpoenaed as a witness.
When the trial court learned of the criminal charges brought against defendant by Mrs. Santoro, it assigned two attorneys to *506 advise her as to whether or not she was obliged to give testimony. After conferring with the assigned attorneys she was then sworn and, under questioning by one of them, stated that she would exercise her "privilege" not to testify. The trial court rested its determination that Mrs. Santoro's testimony was not compellable on two bases: (1) the possibility that the witness would not support defendant's claimed alibi and thereby inflict unanticipated harm upon defendant, and (2) the witness' right to withhold her testimony which the court conceived was sanctioned under Evid.R. 23(2).
The court's concern that defendant might suffer harm from the testimony of his wife was not a valid ground upon which to foreclose defendant from examining her under oath. According to defendant's counsel, before her criminal complaints were filed Mrs. Santoro related facts to an investigator for the public defender which would have supported defendant's claim of alibi. Although her statements were neither made under oath nor reduced to writing, they justified defendant's claim to the benefit of her testimony. While the court was free to point out for defendant the hazards of the course he was following, it was not free to usurp his freedom of choice. It was the defendant, after all, not the court, who would have to bear the consequences, better or worse, of whatever strategy the defense selected.
Evid.R. 23, upon which the court based its finding of the witness' privilege not to testify, provides:
(1) Every person has in any criminal action in which he is an accused a right not to be called as a witness and not to testify.
(2) The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant.
(3) [Irrelevant].
Despite the literal breadth of the language of paragraph (2), Evid.R. 23 contemplates only the prosecution's use of a defendant's spouse as a witness against the defendant. It does not *507 preclude a defendant from compelling the testimony of his wife on his behalf. Indeed, the rule itself is entitled "PRIVILEGE OF ACCUSED," and in the table of contents of N.J. Rules of Evidence (Anno. 1986) the rule title is shown in the following way: "Privilege of accused (i.e., not to testify and to prevent others from testifying)."
The 1967 Commission Note heading the chapter on privileges states: "All of these rules reflect legislative determinations of public policy considered to be more important than the evidence excluded." Thus, if the trial court's interpretation of Evid.R. 23(2) is correct, we should be able to find that some greater public benefit flows from depriving an accused of the right to compel the testimony of his wife.
Although criticized (8 Wigmore, Evidence § 2228 (1961)), it is nevertheless recognized that the public policy purportedly served by preventing one spouse from testifying against another in a criminal case is that of "fostering the harmony and sanctity of the marriage relationship." Trammel v. United States, 445 U.S. 40, 44, 100 S.Ct. 906, 909, 63 L.Ed.2d 186, 199 (1980); State v. Briley, 53 N.J. 498, 504-505 (1969). An additional factor "having some plausibility," 8 Wigmore, Evidence § 2228 at 217 (1961), is the "natural repugnance in every fair-minded person to compelling a wife or husband to be the means of the other's condemnation, and to compelling the culprit to the humiliation of being condemned by the words of his intimate life partner." Ibid. We find no comparable policy to animate the idea that a defendant on trial in a criminal case is any less entitled to the testimony of his wife than of any other person.
Any notion that a defendant might not have the benefit of a spouse's testimony to defend against a criminal charge has its source in a long-discarded mix of medieval concepts which disqualified an accused from testifying in his own defense because of his interest in the case, and precluded his wife from doing so because of the theoretical legal unity of husband and wife. Trammel v. United States, supra; State v. Briley, *508 supra. We can conceive of no contemporary policy consideration which could be served, even remotely, by ruling that spousal testimony is non-compellable by an accused in a criminal case. The prevailing philosophy of spousal testimony is expressed in the following language of the New Jersey Supreme Court:
It is the basic policy of our law that every person is qualified and compellable to be a witness and to give relevant and competent evidence at a trial. Rule 7 of the New Jersey Rules of Evidence; N.J.S. 2A:84A-16. Privileges expressly granted to persons to refuse to testify or to prevent another from testifying are exceptions to that policy. See Rules 23-32, 34, 36-40; N.J.S. 2A:84A-17 to 32. Since rigid adherence to the letter of the privileges promotes the suppression of truth, they should be construed and applied in sensible accommodation to the aim of a just result. In view of the obvious policy of the law to enlarge the domain of competency of witnesses and to adapt rules of evidence to the successful development of the truth, competency should be regarded as the rule and incompetency as the exception. This approach is plainly applicable to the so-called marital privilege. [Citations omitted]. It follows therefore that when a greater public interest is served by recognizing the competency of one spouse to testify against the other and no violence is done to the privilege as expressed in a statutory or judicial rule of evidence, the testimony should be received. [State v. Briley, 53 N.J. 498, 506 (1969)].
The foregoing extract was written in a criminal case in which the Court significantly widened the range of circumstances in which a wife would be permitted to testify, over objection, against her husband. What it held, in effect, was that since there were no considerations of sound public policy to be served by excluding the wife's testimony where her role in the criminal event was other than "strictly that of a witness," 53 N.J. at 509, her testimony was properly allowed. The analysis there made is no less applicable here. Since, as we have already noted, there are no policy considerations favoring the exclusion of a wife's testimony when offered by a defendant, and since it is the "obvious policy of the law to enlarge the domain of competency of witnesses and to adapt rules of evidence to the successful development of the truth," id., at 506, we find no support for the reading given to Evid.R. 23(2) by the trial court.
Evid.R. 23(2) provides no more than that in a criminal case, unless under specific exceptions, one spouse may refuse to testify against the other and that a defendant may prevent his *509 or her spouse from testifying on behalf of the prosecution. Defendant's wife was compellable to testify on his behalf, and the trial court erred in excluding her proffered testimony.
The question which remains is whether or not the error was prejudicial. R. 2:10-2. We are unable to determine this question because we have no inkling as to what Mrs. Santoro's testimony would have been had she been directed to testify. So that we may deal with this issue we will remand the matter to the Law Division and direct that a voir dire be conducted to determine through interrogation of Mrs. Santoro by defendant what her testimony will be should she be produced to testify as a witness in any future retrial of this matter. It is directed that the hearing be completed and transcripts thereof be filed with the Clerk of the Appellate Division within 30 days of the date hereof. The parties may within 10 days thereafter file with this court and exchange letter briefs addressing any issues they may conceive are raised by the remanded proceeding.
Defendant's other contentions, namely that the trial court erred in ruling evidence of his prior convictions admissible and that he was denied effective assistance of counsel, are clearly without merit. R. 2:11-3(e)(2).
Reversed and remanded for further proceedings in accordance with this opinion. We retain jurisdiction.