**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 98-IA-00175-SCT**

*BAPTIST MEMORIAL HOSPITAL-UNION COUNTY*

*v.*

*SAMMY JOHNSON AND DEENA LYNN JOHNSON, INDIVIDUALLY AND NEXT FRIEND OF A MINOR, NAMELY, KAYLA ELIZABETH JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/1998 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | UNION COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL N. WATTS |
| | ANGELA M. SPIVEY |
| ATTORNEYS FOR APPELLEES: | REBECCA PHIPPS |
| | JERRY BYTHEL READ |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 01/06/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 01/27/2000 |

**BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. An interlocutory appeal from the Union County Circuit Court concerning patient-physician privileges invoked by a hospital to keep confidential the identity of its patient and her medical records is before this Court. After ordering the disclosure of the identity of the patient and her records, Judge R. Kenneth Coleman entered an interlocutory appeal order asking for a determination of the scope of the statutory patient-physician privilege. We granted permission for this interlocutory appeal. Kayla Johnson was born in the Baptist Memorial Hospital (BMH) and was accidently taken by hospital staff to the wrong mother to be breast fed. In their subsequent negligence action against the hospital, the parents of Johnson have asked the hospital to reveal the identity of this woman and to produce her medical records. We are faced with the issue of determining whether the patient-physician privilege protects a patient's identity and medical reports when (1) that patient's condition may have an effect on the health of another and (2) that patient is a potential fact witness in a negligence action. After consideration, we find that since the unidentified patient responsible for breast feeding Kayla Johnson is a fact witness to the alleged negligence of the hospital, her

identity must be revealed as she has first hand knowledge of the events that day. We also find that her medical records may be inspected in camera to determine whether the health of Kayla Johnson may be at risk. We therefore affirm Judge Coleman's order compelling BMH to identify the patient and to produce the patient's medical records but reverse in part regarding full disclosure, instead ordering an in camera review by the trial court of all records with the issuance of protective orders if deemed necessary.

## I.

¶2. On December 6, 1995, Kayla Elizabeth Johnson was born at the Baptist Memorial Hospital in Union County, Mississippi. Before she and her mother were released from the hospital a nurse employed by the hospital took Kayla to the wrong mother to be nursed (hereinafter "Mrs. X"). Before the staff recognized the error, Kayla was nursed by Mrs. X. Some hours later, the hospital disclosed the mix-up to the Johnsons but refused to reveal the identity of Mrs. X.

¶3. The Johnsons filed a suit against Baptist Memorial Hospital (hereinafter "BMH") seeking damages for alleged negligence during Kayla's stay. On February 20, 1997, counsel for the Johnsons served interrogatories and requests for production of documents on BMH, requesting disclosure of the identity and address of Mrs. X. BMH then filed a Motion for Protective Order on March 24, 1997, claiming that a response to the Plaintiff's Interrogatory Number 1 would violate the medical privilege of Mrs. X. Some months later on July 7, 1997, the Johnsons filed a Motion to Compel due to BMH's failure to give the name and address of Mrs. X and subsequently a response was filed by BMH claiming such material was "medically privileged patient information."

¶4. Glen Baker, the Risk Manager at BMH, informed Mrs. X of the Johnsons' eagerness to obtain her identity and address. BMH then stated that Mrs. X chose to affirmatively assert her medical privilege of confidentiality. However, Mrs. X did waive her privilege to a limited degree, expressly stipulating which medical records she consented to disclose. Those documents were thereafter turned over to the Johnsons. The documents included records of Mrs. X's pregnancy and delivery (discharge summary), past medical history, genetics screening, hematology and urinalysis profile, drug screen and HIV test.

¶5. Judge Kenneth Coleman presided over a hearing regarding BMH's Motion and Plaintiff's Motion to Compel on December 16, 1997. Subsequently, on January 26, 1998, disclosure of Mrs. X's identity was granted by Judge Coleman. The order also compelled BMH to "produce, for inspection and copying, all medical records, hospital records and other similar documents, of any description, which relate in any way to the unidentified person whom mistakenly breast-fed Kayla Johnson."

¶6. On January 29, 1998, Judge Coleman entered an interlocutory appeal order asking this Court for a determination of the scope of the statutory patient-physician privilege. In turn, we granted leave for this interlocutory appeal pursuant to M.R.A.P. 5.

## II.

**I. WHETHER THE PATIENT-PHYSICIAN PRIVILEGE PROTECTS A PATIENT'S IDENTITY AND MEDICAL RECORDS WHEN (1) THAT PATIENT'S CONDITION MAY HAVE AN EFFECT ON THE HEALTH OF ANOTHER AND (2) THAT PATIENT IS A POTENTIAL FACT WITNESS IN A NEGLIGENCE ACTION.**

¶7. There are two recognized legitimate competing interests involved in this case, one of which must yield.

The privacy interests held by Mrs. X in her medical records are in conflict with the Johnson's interest in protecting the health of their daughter, and in seeking discovery of all facts relevant to their lawsuit against the hospital.

¶8. Under Miss. Code Ann. § 13-1-21 (Supp. 1996) the applicable privilege is statutorily created and states:

> (1) All communications made to a physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such party shall not be required to disclose the same in any legal proceeding except at the instance of the patient or, in case of the death of the patient, at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will.

¶9. The Johnsons claim that a patient's identity is not privileged when the patient is a witness to or a participant in a hospital's tortious misconduct. The Johnsons contend that at the very least, Mrs. X could serve as a fact witness with a great deal of nonprivileged information subject to discovery.

¶10. In response, BMH cites *Pro-Choice Mississippi v. Fordice*, 716 So.2d 645, 662 (Miss. 1998), which held a patient's identity to be unmistakable of a highly personal nature and such disclosure would constitute a violation of the patient's privilege of confidentiality. BMH stresses that the Mississippi Legislature intended to protect the identity and address of the patient in creating Miss. Code Ann. § 13-1-21 which dictates that "all communications made to a hospital or to medical personnel are privileged . . . ." BMH also points out that the non-privileged information which the Johnsons desire is not necessary as it is either already established in the record or readily available through alternative channels of discovery.

¶11. This Court has recently held that public policy encouraging and expediting the investigation and solving of crimes outweighs the privacy rights of individuals. *State v. Baptist Mem. Hosp.-Golden Triangle*, 726 So.2d 554, 561 (Miss. 1998). Such investigations should not be hampered by an entity or individual attempting to conceal crucial information under the guise of the physician-patient privilege. *Id.* Just as the State has a compelling interest in finding and capturing offenders, it also has an interest in seeking out the truth in civil matters. This especially holds true when the health and life of another are potentially at stake.

¶12. We have held that a person's privilege to remain anonymous may be superceded by the importance of their testimony as a fact witness. For example, in criminal law there exists an "informer's privilege" which enables the prosecution to withhold the informant's identity. *Breckenridge v. State*, 472 So.2d 373, 377 (Miss.1985); *Wilson v. State*, 433 So.2d 1142, 1145 (Miss.1983); *Read v. State*, 430 So.2d 832, 835 (Miss.1983); *Pace v. State*, 407 So.2d 530, 533 (Miss.1981); *Strode v. State*, 231 So.2d 779, 783 (Miss.1970). However, if the informant takes part in the police activity, or if the informant becomes a witness to the facts constituting a crime, then he may then be required to testify at trial as a witness, thus revealing his identity. *Breckenridge*, 472 So.2d at 377; *Pace*, 407 So.2d at 533, (citing *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).

¶13. The identity of Mrs. X must be revealed in this case as she may serve as one of only a handful of potential witnesses to the hospital's actions on October 6, 1995. To hold otherwise would allow hospitals to completely conceal the identity of any patient who was involved with or may have information regarding

tortious conduct by a hospital.

¶14. The Johnsons next claim that an individual's medical privilege must yield if the individual's medical condition is likely to have a substantial effect on the health of a patient-litigant. The Johnsons' daughter has experienced bad health since birth and they fear it has a connection with her breast feeding by Mrs. X.

¶15. BMH asserts that the Johnsons have failed to provide any legal basis for the right to the medical records and stress that there are no legal precedents allowing a plaintiff to examine the medical records of a non-party patient who has invoked the medical privilege. BMH claims that a sufficient medical history of Mrs. X has already been disclosed to the Johnsons. Those documents include records of Mrs. X's pregnancy and delivery (discharge summary), past medical history, genetics screening, hematology and urinalysis profile, drug screen and HIV test.

¶16. The context in which this issue is presented is in fact a case of first impression in Mississippi. Therefore, the history and rationale of the patient-physician privilege are worth exploring. Mississippi first held information between doctor and patient privileged in 1906. Miss. Code Ann. § 3695 (1906) provided: "All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient." The statute has since been recodified and republished in what now is Miss. Code Ann. § 13-1-21 (Supp. 1999).

¶17. Moreover, Mississippi Rule of Evidence 503 provides a patient the privilege to refuse and prevent disclosure of their medical information. Rule 503 was adopted in an era when a plaintiff seeking to invoke the privilege could preclude the testimony of a physician at trial merely by stating, "we do not waive the privilege."*Lauderdale County Dep't. of Human Servs. by Barnett v. T.H.G.*, 614 So.2d 377 (Miss. 1992). The comment to Rule 503 points out that the privilege is founded on the public policy that people who need help should not be deterred from receiving it due to fears that their confidences divulged in consultation might be used against them. The patient may claim the privilege, but the person who was the patient's physician is presumed to have authority to claim the privilege on behalf of the patient. *State v. Baptist Mem. Hosp.-Golden Triangle*, 726 So.2d 554, 558 (Miss. 1998).

¶18. In looking to other states for guidance, the state of Missouri appears to be the leader of a handful of jurisdictions which hold the patient-physician privilege is not absolute. The Missouri Supreme Court held that the search for truth may require the disclosure of redacted medical records of nonparty patients even though the unedited records are protected by the physician-patient privilege, Mo.Rev.Stat. § 491.060(5). *State ex rel. Lester E. Cox Med. Ctr. v. Keet*, 678 S.W.2d 813 (Mo.1984). In 1996, the Missouri Supreme Court created a two-pronged test for such circumstances: A court must consider the (1) established relevancy to the matters at issue in the lawsuit, and (2) adequate protection of the privacy rights of non-parties. *State ex rel. Wilfong v. Schaeperkoetter,* 933 S.W.2d 407 (Mo. 1996). It stated: "In this case, the respondent judge could order discovery of the siblings' medical conditions only if they were relevant to the medical malpractice claim and adequate safeguards were provided to protect the non-parties as much as possible." *State ex rel. Wilfong*, 933 S.W.2d at 409-10.

¶19. There are other jurisdictions in which the physician-patient privilege has been held to be maintained if the review of non-party medical records is adequately safeguarded. *Ziegler v. Superior Ct.*, 134 Ariz. 390, 656 P.2d 1251 (Ariz. Ct. App. 1982)(names and addresses of 24 patients were deleted from delivered charts to preserve the doctor-patient privilege); *Community Hosp. Ass'n v. District Ct.*, 194

Colo. 98, 570 P.2d 243 (1977)(medical records of 140 patients were held discoverable after names, addresses, occupation and marital status was removed); *Ventimiglia v. Moffitt*, 502 So.2d 14 (Fla.Ct. App. 1986)(permitting discovery of medical records while protecting patient confidentiality); *Osterman v. Ehrenworth*, 106 N.J.Super. 515, 256 A.2d 123 (1969)(defendant-physician in medical malpractice action compelled to answer interrogatories requesting names and addresses of former patients given the drug prednisone).

¶20. The Supreme Court of Indiana has held that when all information regarding the identities of non-party patients has been redacted from the records, production of the medical records will not violate the physician-patient privilege. *Terre Haute Reg. Hosp., Inc. v. Trueblood*, 600 N.E.2d 1358 (Ind. 1992). The court emphasized that just as a doctor and a patient need full disclosure in order for the doctor to "best" diagnose his patient, the court seeks full disclosure to "best" ascertain the truth. *Terre Haute*, 600 N.E.2d at 1361.

¶21. In *Rudnick v. Superior Ct.*, 11 Cal.3d 924, 114 Cal.Rptr. 603, 523 P.2d 643 (1974) the California Supreme Court stated that the purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. The court's rationale gives some guidance in determining when to allow the discovery of privileged material:

> [I]f the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege. If, however, disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege. Conversely if the disclosure reveals the ailments but not the patient's identity, then such disclosure would appear not to violate the privilege.

*Rudnick*, 523 P.2d at 650 n.13.

¶22. This Court has previously held that the privilege must be interpreted in sensible accommodation to the aim of a just result. *State v. Baptist Mem. Hosp.-Golden Triangle*, 726 So.2d 554, 560 (Miss. 1998) (citing *In the Interest of M.P.C.*, 165 N.J.Super. 131, 397 A.2d 1092, 1095 (App.Div.1979) (quoting *State v. Briley*, 53 N.J. 498, 251 A.2d 442, 446 (1969)). "Such a privilege is accepted only because . . . it serves a more important public interest than the need for full disclosure." *Id*. The purpose of the privilege is to allow a patient to seek treatment without fear of embarrassing disclosure so that he might reveal all of his symptoms to his physician. *Id*. "[T]he patient-physician privilege must give way where it conflicts with the sensible administration of the law and policy...." *Id*. (held redacted patients' records subject to review to contain only information pertaining to treatment given to patients during the time frame enumerated by court) . However, the sensible administration of law and policy discussed in that case involved a criminal prosecution, not a civil action and the records were turned over without the patient's name or address.

¶23. In some instances, in camera inspection may be necessary. *Mississippi Ethics Comm. v. Committee on Professional Responsibility*, 672 So.2d 1222, 1227 (Miss. 1996). In others, where the need for confidentiality is relatively weak and the need for the information in the matter at hand relatively strong, complete unrestricted access may be the rule. See *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (holding that even the Confrontation Clause protection of a criminal defendant did not dictate that he have unrestricted access to children and youth services records and that the interest in a fair trial could be protected by in camera inspection); *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (requiring a balancing of the interests in protecting military

secrets against the relative importance of the information in deciding whether even in camera inspection should be allowed).

¶24. In *State v. U.G.*, 726 So.2d 151 (Miss. 1998), a circuit judge was required to allow the State and defense counsel to review defendant's youth court and school records, which the judge considered in transferring armed robbery case to youth court. This Court held that an in-camera review of the records would have protected defendant, while allowing counsel opportunity to challenge records.

III.

¶25. After an exhaustive review of both this and other states' current views on this issue, this Court finds that full disclosure of Mrs. X's medical records cannot be permitted without certain conditions and protections. While the Johnsons need for the information sought is great, so is the interest Mrs. X has in the confidentiality of her medical records. Therefore, the medical records of Mrs. X shall be turned over to Judge Coleman for an in camera review to determine whether the health of Kayla Johnson may be at risk. If necessary, he may also choose to take advantage of protective orders pursuant to Miss. R. Civ. P. 26(d), a familiar device used to preserve confidentiality in trade secret and other cases in which secrecy is of high importance or there is a need to protect a party from embarrassment. In addition, as already mentioned above, the identity of Mrs. X. must be revealed as she is a vital fact witness to the events surrounding this litigation.

¶26. Therefore, we affirm in part and reverse in part the judgment of the Union County Circuit Court, and this case is remanded to the trial court for proceedings consistent with this opinion.

¶27. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. SMITH, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, WALLER AND COBB, JJ.**

**SMITH, JUSTICE, CONCURRING:**

¶28. In my view, even more compelling than the Johnsons' interest in obtaining the name of Mrs. X for purposes of interviewing her as a fact witness, is the Johnsons' ability to obtain all pertinent medical records of Mrs. X for purposes of safeguarding the health and well being of their daughter, Kayla. Judge Coleman found that Baptist Memorial Hospital-Union County (BMH) should turn over Mrs. X's medical records, stating that this finding extended only to the records in the possession of BMH, and no other medical records of Mrs. X. Surely BMH does not have possession of all medical records of Mrs. X. As the Johnsons stated at the hearing, they wish to obtain the identity of Mrs. X so that they may ask her permission to obtain information regarding her health history. The Johnsons cannot request any other medical records from Mrs. X without first knowing her identity. Other medical records may or may not be privileged; as Judge Coleman stated, that is another matter. But the Johnsons cannot even request the records of Mrs. X that are within the possession of other health care providers without first ascertaining her identity.

¶29. As the majority notes, this Court has held that the physician-patient privilege "must give way where it conflicts with the sensible administration of the law and policy. . . ." *State v. Baptist Mem'l Hosp.-Golden Triangle*, 726 So. 2d 554, 560 (Miss. 1998). The privilege "is accepted only because . . . it serves a more important public interest than the need for full disclosure." *Id.* It is my view that the Johnsons' interest in determining whether Mrs. X's medical history has affected the health of their daughter outweighs Mrs. X's interest in anonymity as well as any interest the Johnsons have in interviewing Mrs. X as a fact witness in their lawsuit against BMH.

**MILLS, WALLER AND COBB, JJ., JOIN THIS OPINION.**